# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT A. HUNT | : | |
| Appellant, | : | No. 1:15-cv-2087 |
| v. | : | Hon. John E. Jones III |
| RITE AID HDQTRS. CORP., | : | |
| Appellee. | : | |

## MEMORANDUM

### October 7, 2016

Appellant Robert A. Hunt appeals an October 15, 2015 Memorandum Order (the "Order") issued by the Honorable Robert N. Opel of the United States Bankruptcy Court for the Middle District of Pennsylvania.[1]  Therein, the Bankruptcy Court stayed the proceedings before it, pending the entry of a final judgment in state court litigation between the parties.  The state court action was previously filed in the Court of Common Pleas of Cumberland County.  The Bankruptcy Court further granted the Appellee, Rite Aid, relief from the automatic stay previously imposed in order to proceed to final judgment in the state action. Hunt filed a timely Notice of Appeal of the Order to this Court on October 29, 2015.  (Doc. 1).  The Appeal has been fully briefed by the parties (docs. 7 & 8) and

---

[1]    The underlying bankruptcy matter is located at Docket Number 1:14-bk-0356-RNO.

is thus ripe for our adjudication. For the reasons that follow, we shall affirm the Order of the Bankruptcy Court.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On June 11, 2009, Rite Aid filed a four-count Complaint against Hunt as well as Defendants Capital Recovery Agency, Inc., CRA Collections, Inc. ("CRA"), David Dixon, and Jeffrey Korbin in the Court of Common Pleas of Cumberland County. (Doc. 2-5, p. 1).[2] Therein, Rite Aid describes a business relationship whereby Hunt and CRA were retained to provide collection services. (Doc. 2-5, ¶ 13). Specifically, "CRA agreed to be responsible for and to assume payment for all of Ride Aid's returned check charges and processing fees." (*Id*., ¶ 14). Pursuant to their agreement, CRA retrieved and took possession of all Rite Aid endorsed returned checks, and was supposed to remit such funds to Rite Aid via wire transfer. (*Id*., ¶¶ 15-19). In exchange, CRA was to "earn a processing fee on each check upon collection . . . equal to the maximum fee provided by law of the state in which it collected said fee." (*Id*., ¶ 20).

Rite Aid alleges, however, that after approximately one year, Hunt "decided that CRA would simply keep the money it collected on behalf or Ride Aid, instead of turning it over . . . ." (Doc. 8, p. 9). When Rite Aid became aware of this, it

---

[2]   Hunt is the owner and principal of CRA Collections, Inc. The other entity sued, Capital Recovery Agency, Inc., as well as the other individual defendants, defaulted and were subsequently released from the case. The only remaining defendants in the matter now are Hunt and CRA Collections. (Doc. 8, p. 8 n.1).

filed the state court action, alleging "breach of contract, breach of implied contract, unjust enrichment, and conversion." (Doc. 2-5, p. 6). Only Counts III and IV, claiming unjust enrichment and conversion, are alleged against Hunt. (Doc. 2-5, p. 17). The Complaint does not request a specific dollar amount in damages, but states that "CRA and CRA collections still have not provided Rite Aid with the approximately $518,489.41 that CRA Collections has admitted it owes Rite Aid." (*Id.* ¶ 36). In relief, Rite Aid has requested compensatory and punitive damages as well as judgment in Rite Aid's favor and against all defendants. (*Id.*, ¶ 80).

The state court action continued for over four years, through discovery and several motions, and was scheduled for trial on February 3, 2014. (Doc. 8, p. 10). Rite Aid alleges that the total amount of damages eventually asserted in the state court action amounted to $2.1 million.[3] (*Id.*, p. 9). On January 29, 2014, Hunt filed for Chapter Seven bankruptcy in the Middle District of Pennsylvania. (*Id.*, p. 10). The bankruptcy schedule now lists Rite Aid as a creditor on a "contingent, unliquidated and disputed" debt of $2.1 million. (*Id.*, p. 11).

On April 30, 2014, Rite Aid filed an Adversary Complaint in the bankruptcy proceedings, seeking an order determining that Hunt's debts to Rite Aid are non-dischargeable under Sections 523(a)(4) and 523(a)(6) of the Bankruptcy Code and

---

[3] "Rite Aid alleges that Hunt '…orchestrated and directed the wrongful withholding of $518,489.41 that CRA Collections itself determined was due and owing to Rite Aid.' Rite Aid also asserts that Hunt's actions caused Rite [Aid] a loss of revenues. Specifically, it is alleged that '…Rite Aid ultimately was forced to take an accounting write-off of $1,614,052.00 as uncollectible debt.'" (Doc. 7, p. 9) (internal citations omitted).

denying Hunt's bankruptcy discharge pursuant to Section 727(a)(3).  (*Id.*; doc. 7, p. 9).  Once again, the parties engaged in discovery, and Rite Aid filed a motion for summary judgment on September 26, 2014.  (Doc. 1, p. 9).  Though the motion was fully briefed, it was never decided.  Rather, on September 23, 2015, the Bankruptcy Court ordered the parties to appear and show cause as to:

> why consideration of the Plaintiff's Motion for Summary Judgment and the trial in this Adversary Proceeding should not be stayed until a final judgment is entered in the Plaintiff's action against the Debtor/Defendant and the non-debtor defendants pending in the Court of Common Pleas of Cumberland County; and . . . why this Court should not grant the Plaintiff, Rite Aid Hdqtrs. Corp., relief from the automatic stay to proceed with the above-referenced litigation . . . .

(Doc. 2-1).  In his appellate brief, Hunt emphasizes that "at no time did Rite Aid file a motion to lift the automatic stay, to seek abstention, or to remand the matter to the Cumberland County Court."  (Doc. 7, p. 10).

Following the issuance of the Order, the parties fully briefed the disputed issues, and on October 7, 2015, a hearing commenced.  (Doc. 8, p. 13; doc. 2-1).  On October 15, 2015, the Bankruptcy Court issued the Memorandum Order described above, staying the bankruptcy proceedings.  Specifically, the Bankruptcy Court found that Rite Aid's "claim against the Debtor, Robert Aaron Hunt, is based upon state court litigation filed in the Court of Common Pleas of Cumberland County;" that resolution of the state court action would likely narrow or eliminate issues of law related to the Adversary Proceedings; and that staying the Adversary

Proceedings would foster the policy of comity with state courts and promote judicial economy.  (Doc. 2-7).  Further, the Bankruptcy Court Ordered that Rite Aid be granted relief from the automatic stay to proceed to final judgment in the state court action.  (*Id.*).

As previously noted, Hunt appealed the Bankruptcy Court's Order to this Court on October 29, 2015.  Hunt submitted a brief in support on January 29, 2016.  (Doc. 7).  Rite Aid filed a brief in opposition on March 14, 2016. (Doc. 8).  The matter is accordingly ripe for our review.

## II.     JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).  We review the Bankruptcy Court's factual findings for clear error and exercise plenary review over legal determinations.  *See In re Udell*, 454 F.3d 180, 183 (3d Cir. 2006) (citing *In re Woskob*, 305 F.3d 177, 181 (3d Cir. 2002)).  We review the decision of a bankruptcy court to lift an automatic stay for abuse of discretion.  *In re the Flintkote Company 8 E. Frederick Place, LLC*, -- Fed.Appx. ---, 2016 WL 3997217, at *1 (3d Cir. 2016) (citing *In re Wilson*, 116 F.3d 87, 89 (3d Cir. 1997)).  An abuse of discretion exists whenever a judicial action is "arbitrary, fanciful, or clearly unreasonable."  *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 412 (3d Cir. 2002).  An abuse of discretion may also arise where the court's ruling was

founded on an error of law or clearly erroneous view of the facts or misapplication of law to the facts. *In re Gioioso*, 979 F.2d 956, 959 (3d Cir. 1992).

### III. ANALYSIS

Hunt bases his arguments that the Bankruptcy Court abused its discretion on four grounds. First, Hunt argues that Rite Aid acquiesced to the Bankruptcy Court's jurisdiction and thus waived its entitlement to abstention or remand to a state court. Second, Hunt suggests that the Bankruptcy Court erred by entering a *sua sponte* Order lifting the automatic stay instead of in response to a motion by either of the parties. Third, Hunt asserts that by failing to hold an evidentiary hearing, the Bankruptcy Court abused its discretion in concluding that "the state court case impacts the discharge issues of relevance in the bankruptcy proceeding." (Doc. 7, p. 17). Finally, Hunt alleges that the record does not support the findings of the Order and that the Bankruptcy Court's conclusion that the Adversary Proceedings would not be ripe for adjudication without a determination that Rite Aid has a proven debt against Hunt is in error.

Our analysis of Hunt's first argument that Rite Aid acquiesced to the Bankruptcy Court's jurisdiction is related to Hunt's second argument that the Bankruptcy Court was not entitled to lift the automatic stay *sua sponte*. 11 U.S.C. § 362(d) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including lack of adequate protection of an interest in property of such party in interest . . . .

The Third Circuit has previously found that this language is mandatory, such that if a bankruptcy court finds cause to grant relief from the stay, it must do so. *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 208 (3d Cir. 1995).

Thus, the plain language of § 362(d) indicates that a court shall grant relief from a stay on the request of a party. However, 11 U.S.C. § 105 (a) provides that

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. *No provision* of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphases added).

Courts have repeatedly held that this provision allows bankruptcy courts to grant relief from an automatic stay *sua sponte*, as the Bankruptcy Court here elected to do. For example, in *In re Cinelli*, Civ. A. No. 14-1007, 2014 WL 4106030, at *4 (E.D.Pa. Aug. 21, 2014), the District Court for the Eastern District of Pennsylvania held that the bankruptcy court had not abused its discretion when it lifted an automatic stay to permit a pending state court action to continue for all creditors listed as defendants, and not merely those creditors who had moved for the relief. Citing *Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 779 (Bankr. E.D.

7

Cal. 1990), the Eastern District concluded that the appellants' argument that § 362(d) precluded such relief *sua sponte* was "without merit." *Id*. Though the Third Circuit has not opined on this matter, a careful review of the relevant case law convinces us that this is correct determination. The Tenth Circuit reached the same conclusion in *Vaughan v. First Nat. Bank*, 13 F.3d 408 (10th Cir. 1993), holding that:

> the Bankruptcy Court did not abuse its discretion in sua sponte lifting the automatic stay of 11 U.S.C. 362 to permit the completion of a pending divorce action in Wheeler County, Texas. Section 105(a) of the Bankruptcy Code allows bankruptcy courts to sua sponte issue any order necessary or appropriate for the administration of the estate, including modifications to the automatic stay.

*Vaughan*, 13 F.3d at 408. In *In re Bellucci*, 119 B.R. at 779, the Bankruptcy Court for the Eastern District of California observed that § 105(a) coupled with § 362(d) "compels the conclusion that a bankruptcy court can lift the automatic stay *sua sponte*." *In re Bellucci*, 119 B.R. at 779. We join the courts described above and also hold that Hunt's argument that the Bankruptcy Court here lacked the authority to lift the stay is without merit.

Because we find that the Bankruptcy Court indeed has the ability to lift an automatic stay *sua sponte* pursuant to 11 U.S.C. 362(d) and § 105(a), the issue of whether Rite Aid acquiesced to the Court's jurisdiction such that it would be unable to move for abstention is irrelevant. Neither party challenged the Bankruptcy Court's jurisdiction over the matter, and so the Court did not rule on

that issue. Further, because the Court had the power to lift the automatic stay and allow the state court action to move forward, it was unnecessary for Rite Aid to move for such relief independently. As such, Hunt's argument here too is unfounded.

Hunt next argues that the bankruptcy proceedings had progressed to a late stage and such the decision to grant a stay in favor of the state court action was an abuse of discretion. This argument is in subset to the larger issue of whether the Bankruptcy Court had sufficient cause to stay its own proceedings; as such, we shall address it in the larger context of Hunt's other arguments that the Court's decision to stay.

As noted above, § 362(d) provides that a court shall grant relief from an automatic stay "for cause." Cause, however, is a term undefined by the Bankruptcy Code. *In re Cinelli*, 2014 WL 4106030, at * 2 ("The Bankruptcy Code does not define cause."). Rather, "it is left to the courts to determine whether cause exists on a case-by-case basis, taking into account the totality of the circumstances." *Id*. (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)). Legislative history informs us, however, that "a desire to permit an action to proceed to completion in another tribunal may provide . . . cause." *In re Bruce*, No. 00-14521DWS, 2000 WL 968777, at *2 (Bankr.E.D. Pa. July 10, 2000) (citing H.R. Rep. No. 95-595, 95th Cong., 1s Sess., 343-44 (1977)). "[I]t will often be

more appropriate to permit proceedings to continue in their place of origin when no great prejudice to the bankruptcy estate would result, inorder [sic] to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *In re Wilson*, 116 F.3d at 91 (citing S.Rep. No. 95-989 at 50 (1978)) (reversing a district court holding refusing to grant relief from a stay in order to proceed with a pending state court appeal).

A perusal of relevant case law indicates that no consistent method for determining whether cause exists to grant relief from an automatic stay has been developed in the Bankruptcy Court for the Middle District of Pennsylvania. The parties have pointed us to none. Rather, it appears that courts in the past presented with similar circumstances have considered a host of factors. For example, in *In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr.D.Del. 2007), the Bankruptcy Court for the District of Delaware discussed the factors outlined by the Second Circuit in deciding whether to lift a stay. These include:

> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties

>are ready for trial in the other proceeding; and 12) the impact of the stay on the parties and the balance of the harms.

*In re SCO Group*, 395 B.R. at 857 (finding cause to lift stay in order to allow litigation between debtors and creditors which had been pending for four years in nonbankruptcy forum and which was ready for trial immediately prior to commencement of debtor's bankruptcy proceedings).

Also in that opinion, the Bankruptcy Court for the District of Delaware outlined its own three-prong balancing test to determine whether relief from a stay is warranted:

>1.  Whether any great prejudice to either the bankrupt estate or the debtor will result from the continuation of the civil suit;
>2.  Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>3.  The probability of the creditor prevailing on the merits.

*Id.* (citing *Izzarelli v. Rexene (In re Rexene Prods.Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)).

In 1997, the Third Circuit determined that "cause" to lift a stay existed after considering a totality of the circumstances, "consistent with [the approach] taken by other courts." *In re Wilson*, 116 F.3d at 91. Our Court of Appeals emphasized that there was "no great prejudice to the bankruptcy estate in granting relief from the stay" and that, importantly, the plaintiff would "have no opportunity to challenge the adverse [state court] judgment before the bankruptcy proceedings are complete. If [plaintiff] is not afforded an opportunity to pursue her appeal in state

court, she will have no forum to litigate her cause." *Id*. at 90. While this rationale does not apply to the instant facts, as the Bankruptcy Court here has jurisdiction to rule on the issues raised in the state court action, the comprehensive consideration that the Third Circuit engaged in nonetheless informs our analysis. With the considerations discussed here in mind, we turn to the facts *sub judice*.

The Bankruptcy Court provided three justifications for its determination to lift the stay. First, the Order noted that the disposition of the state court action would likely "narrow or eliminate the issues of law and fact to be determined in this Adversary proceeding." (Doc. 2-7, ¶ 2). Second, the Bankruptcy Court opined that staying its own proceedings would foster the policy of comity with state courts. (*Id*., ¶ 3). Third, the Court noted that a stay would promote judicial economy. (*Id*.). We agree that these three justifications provide sufficient basis for lifting the stay and that the Bankruptcy Court did not abuse its discretion in so deciding.

First, Hunt argues that the record does not support the Court's finding that the state court action and the Adversary Proceedings were sufficiently related. In support of his argument, Hunt notes that "there was no discussion about a comparison of the allegations in the pleadings in the two cases" at the Bankruptcy Court's hearing. Hunt further seems to indicate that the absence of a specific requested dollar amount in the state court Complaint is proof that the two pleadings

are sufficiently different. (Doc. 7, pp. 18-19). However, a cursory comparison of Rite Aid's Complaint in the state court action and the Adversary Complaint shows that Hunt's argument is wholly without merit, as the Adversary Proceedings are premised upon substantially the same claims as the state court Complaint, and allege the same conduct. Hunt himself notes that "[t]he relief sought by Rite Aid [in the Bankruptcy Court] seeks to deny the discharge afforded to Mr. Hunt on account of the debt allegedly owed to Rite Aid because Rite Aid asserts that Mr. Hunt committed conversion, embezzlement, and destroyed records." (Doc. 2-2, p. 4). Evidence of the aforementioned destruction of records was uncovered throughout the course of the discovery in state court, (Doc. 8, p. 3 ("During discovery in the State Court Litigation, Hunt admitted that he personally deleted those collection records.")), while the tort of conversion is specifically alleged in the state court Complaint. Further, the two Complaints assert exactly the same dollar amount in checks that Rite Aid alleges it did not receive from Hunt -- $518,489.41. That Rite Aid did not request a specific damages amount at the outset of the state court action does not differentiate it from the Adversary Proceedings, as indeed at the time the Complaint was filed, Rite Aid was unsure of a complete accounting of the funds it might allege Defendants caused it to lose.

In short, the Bankruptcy Court's determination that the two proceedings were interrelated was well supported by a plethora of evidence, such that it is likely

13

the Court did not deem that further discussion on the record was necessary to establish that conclusion. Hunt posits no explanation for a separate cause of action, and does no more than waste this Court's time with a frivolous argument to the contrary.

Next, Hunt argues that the Bankruptcy Court proceedings had been ongoing such that the Court abused its discretion by lifting the stay so close to the time that the Proceedings were scheduled to be tried. However, the same argument can be made regarding the timing of the declaration of bankruptcy, in that the state court proceeding was mere days from trial when it was stayed. Contrastingly, the Bankruptcy Court Proceedings was scheduled for weeks after the Court issued the Order, and would undoubtedly have been further delayed due to the pending summary judgment motion that had yet to be ruled upon. The fact that the state court action was nearing trial weighs in favor of the Bankruptcy Court's decision to stay, as is the fact that the Commonwealth Court was intimately familiar with the facts of the case before it, having decided several pre-trial motions and conducted discovery over the course of nearly four years. *See In re SCO Group*, 395 B.R. at 857 ("[R]elief from the stay may be granted 'when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit . . . is ready for trial.'"); *In re Bruce*, 2000 WL 968777, at *3 ("Courts have granted relief from the automatic stay to unsecured creditors under the "cause" prong of §

362(d) to allow matters which were on the verge of trial when bankruptcy was filed to proceed"). Thus, this factor too justifies the Bankruptcy Court's finding that cause existed to lift the stay.

Finally, Hunt argues that lifting the stay was an abuse of the Court's discretion because of the Court's failure to hold an evidentiary hearing. Indeed § 362(d) mandates that such a hearing commence. However, the Court *did hold a hearing* and while no evidence was presented, the Court heard oral argument between the parties. Further, the parties fully briefed the relevant issues, and Rite Aid points out that Hunt never requested an additional evidentiary hearing. While § 362(d) requires a hearing, it does not demand that it be evidentiary in nature. Hunt admits to so much in his brief, which states that § 362(d) "is silent as to the nature of that hearing." (Doc. 7, p. 16). However, Hunt points *to In re Iezzi*, 504 B.R. 777, 792-93 (Bankr. E.D.Pa. 2014) for the proposition that there must be a "pinpoint record inquiry" into whether the state court action impacts the discharge issues of relevance in the bankruptcy proceeding, and seeks to imply that this requirement mandates an evidentiary hearing. (Doc. 7, p. 12). We disagree with this assessment of the case law.

*In re Iezzi* resolves a complex path of litigation in which a debtor attempted to have the automatic stay imposed by his bankruptcy court proceedings retroactively lifted such that a favorable judgment in the Pennsylvania

Commonwealth Court unintentionally entered after the stay was imposed could be applied to his estate. *See generally, In re Iezzi*, 504 B.R. 777. The Bankruptcy Court in *In re Iezzi* first observed that "[w]hen a debtor and creditor have been locked in a longstanding state court dispute regarding the validity of the creditor's claim that is interrupted and stayed by a bankruptcy filing, it is well within the discretion of the bankruptcy court to defer to the ongoing state court proceedings." *Id.* at 792. It then went on to find that in this particular instance, lifting the stay was not warranted as the creditor had already offered to waive its right to the post-petition fees, rendering the parties' dispute moot and nonjusticiable. *Id.* at 793.[4]

This conclusion does not support Hunt's allegation that a court must engage in a "pinpoint record inquiry" as to whether the state court action impacts the discharge issues of relevance in the bankruptcy proceeding. Rather, the court's rationale in *In re Iezzi* is founded on its conclusion that even if the state court's judgment was reinstituted and the action litigated to its conclusion, that judgment could have no effect upon the bankruptcy court proceedings. Such is not the case in the instant action. Rite Aid here has not offered to waive its right to post-petition fees in the event that a judgment that Hunt owes Rite Aid damages to the

---

[4] The waiver involved an alleged $1,878.34 in delinquent recycling and trash fees that the creditor, the City, agreed to waive following a ruling by the Commonwealth Court of Pennsylvania that the fees were invalid because the City's authority to assess the fee was preempted by the Solid Waste Management Act, 35 P.S. §§ 6018.101-6018.1003 and the Municipal Waste Planning Recycling, and Waste Reduction Act, 53 P.S. §§ 400.101-4000.1904. *In re Iezzi*, 504 B.R. at 781-82.

tune of $2.1 million is rendered. Should Hunt be able to garner such an offer from Rite Aid, we should gladly revisit this analysis – however we suspect such a development unlikely to be forthcoming.

Rather, we conclude with our determination that the Bankruptcy Court here did not abuse its discretion in lifting the stay. The claims against Hunt must be tried; whether they are tried in bankruptcy court or state court do not gravely impact the costs and expenses Hunt may incur in doing so. *See In re Cinelli*, 2014 WL 4106030, at *2-3 ("Cinelli will not spend much more, if any at all, to continue to defend the case in state court. He must pay attorney's fees and costs whether the case is tried in either court."). Further, the Bankruptcy Court may exercise its discretion to consider principles of comity with state courts, which it has done here in reaching its conclusion. *See In re Drauschak*, 481 B.R. 330, 345 (Bankr. E.D.Pa. 2012) ("Issues of comity and economy may dictate that the non-bankruptcy forum conclude the resolution of that dispute . . . ."). Finally, the important issue of whether any damages, should they be rendered against Hunt and in Rite Aid's favor, shall be dischargeable remains within the purview of the Bankruptcy Court following a decision by the Court of Common Pleas. These considerations, combined with the factors already discussed above, cause us to conclude that the Court did not abuse its discretion and instead acted fully within its purview to lift the stay and allow the parties' action in state court to continue.

**IV. CONCLUSION**

For the reasons set forth in this Memorandum, we shall deny the appeal and affirm the Opinion of the Bankruptcy Court. An appropriate Order shall issue.